## Austin et al. v. Austin.

March 15, 1949.

Diederich & Lycan for appellants.

C. F. See, Jr. for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming in part, reversing in part.

Appellee, plaintiff below, instituted suit against appellants, children of appellee, and the children of a deceased son, George Austin. In April 1937, Mr. Austin executed a deed to five parcels of land, naming as grantees his seven children, one being George, who thereafter died leaving a widow and child. This deed recites a consideration of $1 and other good and valuable consideration, and provides the grantor is to have full control of the property conveyed during his natural life. It conveys the property to the named grantees, "parties of the second part and their heirs, one-seventh undivided interest in the following described property." The alleged omission of the word "each" is a subject of discussion.

Plaintiff sought to have the deed cancelled, and have defendants "reconvey" the property, or if they should refuse, to have the master commissioner convey on their behalf. The foundation of his relief was that the son George came to his home about ten days after the death of his, plaintiff's, wife, when he was in a "troubled condition, and did not know the deed was made to one-seventh of all the land," and did not discover the fact until about a week before he began his suit. He charges that the deed was procured by fraud and deceit. The specific charge is that George fraudulently represented to him that the deed only conveyed an interest to George and that he upon request, would reconvey to him; that shortly before his death George had promised to reconvey, but had died before executing a deed. He alleged that the representation alleged to have been made by George, was for the "use and benefit of all plaintiff's children," and that the conveyance was without consideration.

Defendants filed joint answer and counterclaim in which they denied all allegations of the petition, except as to the execution of the deed of 1937, and the prior death of the son George. Affirmatively they plead that prior to the death of his wife, Mary C. Austin, April 3, 1937, plaintiff had executed a deed conveying all the lands embraced in the petition to her, reserving a life estate, thus vesting title in her subject to grantee's life estate. It is alleged that as to the Blankenship tract, Mary C. Austin was the owner of a one-sixth undivided interest by inheritance from her father; that Harry, a son, had paid for one of the tracts described. The widow having died intestate, defendants claimed the land, excepting the interest of Harry, by inheritance, subject to the life estate and curtesy rights of plaintiff. This deed to the widow admittedly, duly acknowledged and alleged to have been delivered, was never recorded. At this point we may say there is no issue as to Harry's equitable title to one of the tracts described.

One contention of appellants is that it was the intention of plaintiff, and understanding of defendants, that the deed of 1937 was to convey to each a one-seventh undivided interest; that by mistake and oversight of the scrivener the word "each" was omitted before or after the words "one-seventh." They pray (1) that the petition be dismissed; (2) that the deed from Plaintiff to

714

his wife be established and recorded, and that the judgment fix the rights of the defendants, subject to the rights of the son Harry, the admitted owner of the equitable title in one tract.

It was also asked that the court adjudge what effect, if any, the deed set out in the petition has on their claimed title, and if of effect that the court direct reformation so as to convey a one-seventh undivided interest to each of the grantees. Upon consideration of the whole case we are inclined to the opinion that the second proposition is better established by pleadings and supporting proof.

After proof by way of depositions, the cause was submitted, the chancellor being of the opinion "adjudged that the proof is not sufficient to sustain either the plaintiff's petition or defendants' counterclaim; therefore, the petition is dismissed, and likewise the counterclaim is dismissed." Both parties excepted to the judgment, prayed and were granted appeals, the defendants bring up the record; plaintiff has moved for and been granted cross appeal.

We are of the opinion that insofar as any charge of fraud or deceit be involved, as set out in plaintiff's petition, the court correctly ruled. Appellee's testimony on this point was devoid of proof of fraud or deceit, and not of probative value on the grounds of incapacity or undue influence. He testified that he made the deed (April 12, 1937) but it was supposed to be made to George conveying a one-seventh interest in all the lands, made through his, George's "influence," and he did not discover that all the children were embraced in the deed until shortly before he began his suit; that it was made very shortly after his wife's death, at a time when "I was not at myself." He does not say that it was the understanding that George should reconvey at his request.

However, appellants base their right to relief on the claim that when the deed was made in 1937, title to all the property embraced therein was in the wife, under the prior acknowledged and delivered, though unrecorded deed. It may be that this assumption led them to emphasize proof on this point, rather than combatting the claim of appellee that there was fraud or deceit or

mental incapacity, or undue influence practiced on appellee. Their main contention is that appellee having conveyed the property to the wife, had nothing to convey thereafter. On this point Mr. Austin testified that prior to his wife's death he conveyed to her all the property embraced in the later deed, for a "specific purpose." This was signed and acknowledged, and he says he took it home and "showed it to her and put in my desk;" that after his wife's death one of his 'daughters got it out and he took it from her and tore it up; that he did not get the consent of any of the children to destroy it. Explaining why he had executed the deed he said, "I had it drawn up so if anything should happen; she was worried, thought I would be sued for damages, and to ease her feelings I had it drawn up. It was a matter of precaution; when all that subsided that was all there was to it."

Counsel for appellants contend that since Mr. Austin admitted that the deed was made to the wife to avoid potential creditors, the title passed to the wife if there was delivery. Fyffe's Adm'r v. Lyons, 274 Ky. 399, 118 S.W.2d 745, and that its admitted destruction, without permission did not divest title. McHargue v. McHargue, 269 Ky. 355, 107 S.W.2d 278.

Three of appellee's daughters and one son, Harry, testified. Omitting that part of their testimony relating to the 1937 deed, except to say that they all said it was made for the purpose of settling the mother's estate, they make it fairly clear that in law there was actual delivery to and possession of the document by the wife. The son said that he saw the deed in his mother's possession approximately one year prior to her death. A daughter, Mrs. Bowers, testified that she was at home one day and her mother "brought it out;" handed it to her and asked her to have it recorded; "a storm came up and I didn't go to town; I left the next day and forgot about it." She says she read the deed and gave it back to her mother. On cross-examination she says that the deed was kept in her father's desk, to which the mother had access.

Mrs. Bell, a daughter, says that the deed to the mother was made about two years before her death. She said the deed was "lying around; anyone could have

picked it up." She said she was at home when her father brought it home and gave it to the mother, and she and her mother read it; she says that after her mother's death she took the deed and kept it until her father forced her to give it to him. Mrs. Niceley, another daughter, testified that her mother kept the deed with all title and insurance papers, to which she had access. All who testified said that, as far as they knew, none of the children had any intention of depriving the father of his reserved interest, the life estate, or curtesy interest in the Blankenship estate; they also testified that they did not consent to the destruction of the deed, and make it fairly clear that the second deed was made to settle the mother's estate.

After careful consideration of the pleadings and proof we are of the opinion that the chancellor correctly dismissed plaintiff's petition, so the judgment is affirmed in that respect, but reversed insofar as it dismisses appellants' counterclaim, with directions to set aside that portion and enter one decreeing title in appellants, preserving to the son Harry his admitted equitable title to that portion of the land claimed by him, and preserving to Mr. Austin the admitted life estate.

Affirmed in part, reversed in part.